# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>TEXAS INSTRUMENTS §<br>INCORPORATED; FORD MOTOR §<br>COMPANY §<br>Defendants. § | CIVIL ACTION NO. 2:22-CV-000482-RWS |

## ORDER

Before the Court is Defendants Ford Motor Company and Texas Instruments Incorporated's Joint Motion to Dismiss Plaintiff's Willfulness and Indirect Infringement Claims. Docket No. 21. Plaintiff Network System Technologies, LLC opposes this motion. Docket No. 36. This motion is fully briefed. Docket Nos. 21, 36, 39. The Court held a hearing on this motion on June 27, 2023. Docket Nos. 60, 68, 70.

For the reasons discussed below, the Court hereby **DENIES-IN-PART** and **GRANTS-IN-PART** Defendants' Joint Motion to Dismiss (Docket No. 21).

## Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal where a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). For motions to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the plaintiff's complaint and view those allegations in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.)*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The Supreme Court established a two-step approach to assess the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are "not entitled to the assumption of truth." *Id.* at 678–79. Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 Fed. Appx. 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (2009)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## Willfulness Claims

Defendants move to dismiss claims of willfulness because the complaint fails to plausibly allege defendants had (1) pre-suit knowledge of the asserted patents or that (2) Defendants engaged in any culpable or egregious conduct. Docket No. 21 at 2–9. Plaintiff argues it sufficiently pleaded

pre-suit knowledge because it is premature to consider pre-suit and post-suit knowledge separately. Docket No. 36 at 12. Plaintiff further argue its complaint offers several well-pleaded allegations of knowledge, including allegations that (1) Philips Semiconductors, Philips's SoC interconnect research, Philips's patent portfolio generally, and the Asserted Patents specifically were famous in the semiconductor industry in the pre-complaint period, (2) Defendants "considered and analyzed Philips's patenting activity generally," and more specifically monitored the inventions and Asserted Patent, and (3) identified the inventions described and Asserted Patents as relevant during product road mapping because "Defendants desired to develop their products in ways that would not infringe others' patents." *Id.* at 2–4.

### A. Here it is Appropriate to Consider Pre- and Post-Suit Allegations Separately

Defendants argue the Court should consider the pre- and post-suit allegations of knowledge separately because the complaint offers no constructive evidence of pre-suit knowledge, such as letters, communications between Plaintiff and Defendants, or patent markings and that the complaint itself does not establish pre-suit knowledge. Docket No. 21 at 7–8 (citing *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-37-RWS, 2016 WL 3878246, at *1 (E.D. Tex. Mar. 30, 2016); *Maxell Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2019 WL 7905455, at *5 (E.D. Tex. Oct. 23, 2019); *T-Rex Prop. AB v. Regal Ent. Grp.*, No. 6:16-CV-1029-RWSKNM, 2017 WL 4229372 (E.D. Tex. Aug. 31, 2017), *report and recommendation adopted*, 2017 WL 4225441 (E.D. Tex. Sept. 22, 2017)).

In response, Plaintiff argues it is improper to parse out pre- and post-suit knowledge at this phase of litigation and that the complaint provides notice and there is an allegation of continuing infringement. Docket No. 36 at 6–7 (citing *BillJCo v. Cisco Sys.* ("*BillJCo I*"), No. 2:21-CV-00181-JRG, 2021 WL 6618529, at *6 (E.D. Tex. Nov. 30, 2021); *Alacritech Inc. v. CenturyLink,*

*Inc.*, No. 2:16-CV-00693-RWS-RSP, 2017 WL 4230582, at *2 (E.D. Tex. Sept. 4, 2017), *report and recommendation adopted*, 2017 WL 4237723 (E.D. Tex. Sept. 22, 2017); *KIPB LLC v. Samsung Elecs. Co.*, No. 2:19-CV-56-JRG-RSP, 2020 WL 1500062, at *3 (E.D. Tex. Mar. 9, 2020), *report and recommendation adopted*, 2020 WL 1495725 (E.D. Tex. Mar. 27, 2020); *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-CV-1032-JRG, 2017 WL 8727249, at *6 (E.D. Tex. Sept. 22, 2017)).

The parties are correct that, in the Fifth Circuit, there is a plethora of non-binding authority on both sides as to whether it is appropriate to consider pre-suit versus post-suit knowledge at the motion to dismiss phase. But Plaintiff fails to persuasively argue that it is premature to consider pre-suit and post-suit allegations separately based on the complaint before the Court. For example, Plaintiff's reliance on *Alacritech* is inapplicable, because in that case defendants failed to proffer law refuting plaintiff's position that it was inappropriate to consider pre- and post-suit activities separately. 2017 WL 4230582, at *2. That is not the case here. And while the Eastern District of Texas declined considering pre- and post-suit conduct separately in *BillJCo I*, less than a year later the Western District of Texas published an opinion in *BillJCo, LLC v. Apple Inc.* ("*BillJCo II*") that found it *was* appropriate to dismiss pre-suit willfulness and induced infringement claims after evaluating the pre- and post- suit allegations separately. *See* 583 F. Supp. 3d 769, 776-77 (W.D. Tex. 2022). Accordingly, considering pre-suit and post-suit allegations of knowledge and intent separately is consistent with recent decisions in this district, as well as the decisions of out-of-circuit courts. *Compare KIPB LLC*, 2020 WL 1500062, at *3 (2020 report and recommendation declining to evaluate pre-suit and post-suit willfulness allegations separately) *with NXP USA*, 2022 WL 799071, at *3 *and Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-cv-0172, 2022 WL 610796, at *7 (E.D. Tex. Jan. 24, 2022). Indeed, this separate analysis is appropriate

here, given the requirement that a pleading must provide sufficient facts to state a claim is "plausible on its face." *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

Here, the complaint alleges different bases for Defendants' knowledge of the Asserted Patents over the different time periods. And the filing of the complaint itself does not plausibly support an inference that Defendants had pre-suit knowledge of the Asserted Patents. Accordingly, the Court will consider the pre- and post-suit willfulness claims separately.

### B. Plaintiff's Pre-Suit Willfulness Claims

#### 1. Plaintiff does not plausibly plead pre-suit knowledge

Here, Plaintiff offers multiple theories in support of its theory that Defendants had pre-suit knowledge: (1) the filing of the complaint, (2) the "fame" theory, and (3) a "patent monitoring/design around" theory. Considering these allegations in the context of the complaint as a whole, these allegations, on their face, do not offer a plausible theory of Defendants' pre-suit knowledge. *See Arigna Tech. Ltd.*, 2022 WL 610796, at *7.

First, Defendants argue Plaintiff's "fame" theory is implausible and contrary to precedent that has routinely dismissed pre-suit willfulness based on allegations related to monitoring patent portfolios of well-known industry[1] participants. Docket No. 21 at 4. Defendants argue that nowhere in the complaint does Plaintiff cite evidence that the asserted patents are famous—for example, the complaint alleges U.S. Patent No. 8,072,893 ("'2893 patent") was cited around thirteen times in patent applications but provides no such information for the '800 Patent. *See* Docket No. 39 at 4–5 (citing Docket No. 1, ¶¶ 74, 80–90). Defendants argue that Plaintiff's

---

[1] Defendants also argue that Ford is not a member of the semiconductor industry. *See e.g.,* Docket No. 39 at 4, n.3.

reliance on the prosecution activities of third parties—such as Intel and IBM—has no relevance as to whether Ford and TI knew about the asserted patents. *Id.* at 5–6 (citing *Soverain IP, LLC v. Microsoft Corp*. No. 2:17-cv-00204, 2018 WL 1465792 (E.D. Tex. Mar. 26, 2018)).

Plaintiff argues that even if its fame theory is implausible, its allegations of pre-suit knowledge were not just based on the "fame" of the patents but also allegations that Defendants specifically monitored Koninklijke Philips N.V.'s ("Philips") published patent applications in the semiconductor space. *Id.* at 6–8, 10. Plaintiff argues that similar allegations of monitoring a patent portfolio have been sufficient to support pre-suit notice and that the level of specificity sought by Defendants is unnecessary. *See id.* at 8–9, 11–12 (citing *Voip-Pal.com, Inc. v. Facebook, Inc*., No. 6:21-cv-00665-ADA, 2022 WL 1394550, at *2 (W.D. Tex. May 3, 2022); *Jawbone Innovations, LLC v. Google LLC*, 6:21-cv-00985-ADA, Dkt. 85, 4–5 (W.D. Tex. Oct. 12, 2022); *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc*., No. 2:16-CV-638-JRG, 2017 WL 11632209, at *4 (E.D. Tex. May 16, 2017)[2]). Plaintiff also argues that the cases cited by Defendants are inapposite because they address different factual bases for knowledge, or they rely on out-of-circuit cases that do not follow precedent of how courts in this district have treated the pre- and post-suit knowledge cases. *Id.* at 10–11.

Plaintiff alleges the Asserted Patents have been cited by "industry leaders" in the semiconductor industry—for example, some of the Asserted Patents were cited in up to 76 patent applications by third parties. Docket No. 1, ¶¶ 26, 38, 62. Plaintiff also alleges the Defendants monitored Philips' published patents applications in the "semiconductor space" around the years 2006–2012 "to develop non-infringing products and product roadmaps." *See e.g.*, *id.* at ¶¶ 27–31,

---

[2] In *Uniloc* pre-suit knowledge of the asserted patents was not at issue because plaintiff conceded its complaint "does not state a claim for pre-suit indirect infringement because [plaintiff] intentionally elected not to assert such a claim." *Uniloc*, 2017 WL 11632209, at *3.

39–43, 51–55, 63–67. Plaintiff further alleges that Defendant Texas Instruments is a "leading semiconductor company" that is currently doing billions of dollars' worth of business in the "semiconductor wafer fabrication" industry. *Id.* at ¶¶ 4, 95. And Plaintiff alleges that Ford is a "leading automobile company"—that purchases "or otherwise obtain[s] the TI SoCs from TI" through license agreements and provides products to consumers that contain TI SoCs including Arteris interconnect technology. *Id.* at ¶¶ 18, 95; *see also id.* at n.11 (describing newswire article that states "[TI] and Ford Motor Company have collaborated on an infotainment solution").

Plaintiff has failed to plausibly plead pre-suit knowledge of the Asserted Patents. At the hearing, Plaintiff admitted that knowledge about a company and its technology is "[n]ot necessarily" equivalent to knowledge of the asserted patents. Docket No. 70 at 27:1–18. And, while some of the Asserted Patents have been cited up to 76 times, none of these citations are attributed to Defendants, and this relatively low number of citations alone does not plausibly support an allegation of fame. *Cf. Soverain IP*, 2018 WL 1465792 (E.D. Tex. Mar. 26, 2018) (noting the patents and published applications "have been cited in over 6000 issued United States patents and published applications as prior art); *see e.g.*, *BillJCo II*, 583 F. Supp. 3d at 776-77 ("The Court will not, however, establish a rule that notice of one patent in a portfolio or large family constitutes constructive notice of every patent in that portfolio or family.").

Plaintiff points out it has additionally pleaded that Defendants monitored Philips' semiconductor space patenting activities between 2006–2012 as part of Defendants' product development and product roadmap process. Plaintiff argues that is reasonable to infer that a leading semiconductor manufacturing company, such as TI, would have a patent monitoring program in

place to ensure its product development and product roadmaps avoided infringement.[3] But, similar to the fame theory, Plaintiff's product road mapping and monitoring theories fail to plausibly plead facts that show Defendants' general knowledge of Philips' semiconductor patenting activities or its general product road-mapping activities gave Defendants specific knowledge of the Asserted Patents. *See e.g., BillJCo II*, 583 F. Supp. 3d at 776-77.

Plaintiff's monitoring and product road mapping theories of pre-suit knowledge are even less plausible when it comes to Ford. Ford is an alleged leader of the automotive industry, *not* an alleged leader in the semiconductor industry. Plaintiff's briefing admits that while TI is a part of the semiconductor industry, Ford just purchases components from TI. Docket No. 36 at 9. Even if it is reasonable to infer Ford has a patent monitoring program due to its size, the complaint fails to plausibly allege that an *automotive company* would monitor parts it purchases from its third-party semiconductor suppliers for potential infringement issues. Accordingly, Plaintiff fails to plausibly allege that automotive-focused Ford would be monitoring Philips' patents or the patent-related activity of those in the semiconductor industry.

Defendants are correct that the cases upon which Plaintiff relies do not support pre-suit knowledge here, whether Plaintiff's fame, monitoring, or product mapping theories are considered alone or collectively. For example, *Voip-Pal.com* describes pre-suit letters or litigation that provided a reasonable inference that defendants were aware of plaintiff's patents. *Voip-Pal.com*, 2022 WL 1394550, at *2. In *Jawbone Innovations*, there complaint that certain employees of

---

[3] At the hearing, TI conceded that this allegation was sufficient to put TI on notice that Plaintiff would "be seeking discovery anyway about... how the products work ... [and] how this technology was developed at TI," including whether TI's development "has anything to do with their knowledge of the patents." Docket No. 70 at 32:2–33:3. The Court agrees such discovery remains relevant, despite the Court's dismissal of the pre-suit willfulness and indirect infringement claims.

defendant were plaintiff's former employees who had knowledge of the asserted patents and that defendant had been contacted about the value of the asserted patents. 6:21-cv-00985-ADA, Dkt. 85, 4–5 (W.D. Tex. Oct. 12, 2022). In *Kirsch*, the plaintiff "nudged its claims across the line from conceivable to plausible" by alleging "that the relevant market is small and that [plaintiff] is a pioneer, that it marks all of its products and product literature with the [asserted] patent and that [*defendant*], its direct competitor, has interacted with the relevant literature on at least two occasions and potentially more[.]" 2020 WL 8363154, at *4. Specifically, the complaint in *Kirsch* alleged that defendant obtained product literature marked with the asserted patent at an exposition attended by both parties. *Id.* at *2. Plaintiff pleads insufficient factual allegations here to nudge their allegations from conceivable to plausible.

Accordingly, while it is *possible* that Defendants knew, or should have known, about the Asserted Patents pre-suit, Plaintiff fails to persuasively argue its proffered theories provides a *plausible* basis for Defendants' pre-suit knowledge. *See e.g.*, *BillJCo II*, 583 F. Supp. 3d at 776-77 ("The Court will not, however, establish a rule that notice of one patent in a portfolio or large family constitutes constructive notice of every patent in that portfolio or family.").

### 2. Plaintiff Fails to Sufficiently Plead Pre-Suit Intent

Defendants also argue the complaint affirmatively pleads that Defendants behavior was not egregious because Plaintiff's complaint references "Defendants' desires to develop noninfringing products and product roadmaps" for each asserted patent. Docket No. 36 at 8; *see also*, *e.g.*, Docket No. 1, ¶¶ 31, 43, 55, 67, 79, 90. Defendants argue this affirmative pleading of good faith renders Plaintiff's position that it need not plead egregiousness a "straw man" argument, especially given the fact that the complaint does not allege any culpable conduct. Docket No. 39 at 6–7. Defendants further argue that Plaintiff failed to address that its own motion practice concedes Defendants' lack

of culpability because it informed the Court certain information critical to Plaintiff's infringement theories was "uniquely in possession" of third parties. *Id.* at 7.

In response, Plaintiff argues it need not plead egregiousness in its complaint. Docket No. 36 at 6–7, 12 (citing *Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *3 (E.D. Tex. Aug. 24, 2022)). Plaintiff further argues that Defendants' interpretation of the complaint's allegations concerning the development of design arounds and roadmaps is additional evidence of Defendants' knowledge of the asserted patents and does not speak to the Defendants' state of mind. *Id.* at 12-13.

Here, Plaintiff pleaded that Defendants pre-suit monitoring and product mapping of the Asserted Patents occurred because Defendants "sought to develop their products and product roadmaps, including the products described herein, in ways that would ***not infringe*** U.S. patents in the semiconductor space." Docket No. 1 ¶¶ 27, 39, 51, 63, 75, 86. In response, Plaintiff argues that "this allegation relates to knowledge of the Asserted Patents and is not an admission that Defendants did not willfully and intentionally infringe." Docket No. 36 at 12–13. But, despite Plaintiff's argument, Plaintiff's own pleadings concede that Defendants' alleged conduct related to product road mapping and monitoring would occur because of Defendants' intent not to infringe. Accordingly, Defendants persuasively show that Plaintiff's pre-suit allegations of willfulness should be dismissed for failing to allege culpable conduct. *See Fractus, S.A. v. TCL Corp.*, No. 2:20-CV-00097-JRG, 2021 WL 2483155, at *4 (E.D. Tex. June 2, 2021) (granting a Rule 12(b)(6) motion to dismiss willful infringement claims the complaint did not "allege any culpable conduct or any set of facts supporting an inference of culpable conduct").

### C. Plaintiff's Post-Suit Willfulness Claims

Defendants, however, fail to persuasively argue the willfulness claim should be dismissed for post-suit activities because the complaint alleges there is continuing infringement. *See e.g.*, Docket No. 1, ¶¶ 99, 101, 103, 108, 110, 112, 126, 128, 129. Even if the Court credits Defendants' arguments about Plaintiff's alleged concessions about the lack of pre-suit knowledge and intent, the complaint and allegations of continuing infringement have put Defendants on notice of Plaintiff's infringement theories, including why Plaintiff believes Defendants' design arounds and product maps did not result in noninfringing products. Accordingly, it is reasonable to draw the inference that any continuing infringement occurring post-suit may be willful. *See e.g.*, *NXP USA Inc. v. MediaTek Inc.*, No. 2:21-CV-00318-JRG, 2022 WL 799071, at *4 (E.D. Tex. Mar. 15, 2022) (granting motion to dismiss for pre-suit willfulness but denying motion to dismiss post-suit willfulness because "allegations that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint are sufficient to at least state a claim for post-suit willful infringement").

### Indirect Infringement Claims.

Defendants argue the indirect infringement claims should be dismissed because the complaint fails to plausibly allege that Defendants **(**1) had pre-suit knowledge of the asserted patents and alleged infringement; (2) contributed to infringement by selling a component they knew was made especially for infringement; and (3) fails to show a "specific intent" to induce infringement. The parties' arguments concerning pre- and post-suit intent and knowledge were already addressed by the Court with respect to the willfulness claims. Accordingly, Plaintiff's pre-suit indirect infringement claims must fail for the same reasons above. Similarly, Plaintiff's post-suit knowledge and intent allegations against both Defendants, are sufficient.

Defendants also argue that Plaintiff's contributory infringement allegations are boilerplate and fail to allege Defendants "sold any component knowing it was especially made for use in infringing the asserted patents." Docket No. 21 at 10. Defendants argue Plaintiff fails to identify the particular components that have no substantial noninfringing uses. *Id.* Defendants further argue that the complaint's description of the use of informational and promotional materials does not sufficiently show the components were especially made for use in infringing the asserted patents. Docket No. 39 at 9. Finally, Defendants argue that the "identification of *identical* inducement allegations against Defendants TI and Ford—unrelated companies selling different products in two completely different industries—further exposes that NST's allegations are boilerplate and devoid of factual content." *Id.*

In response, Plaintiff argues that there is no need to plead that there are no noninfringing alternatives at this stage, but that even if it was required, the complaint alleges the accused components are not staple or commodity articles that are suitable for substantial noninfringing uses. Docket No. 36 at 7, 13–14. Plaintiff argues that Defendants' promotional materials, websites, data sheets, manuals and guides provide enough information to show no substantial noninfringing uses and are sufficient to show specific intent at this phase of litigation. *Id.* at 13–16.

Plaintiff persuasively shows the complaint sufficiently pleaded that the accused products have no substantial noninfringing uses by relying on claim charts and identifying exemplary promotional materials. *See Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. 2019) (finding that the identification of instruction manuals, communications with consumers, and advertisements and promotional materials resulted in a sufficiently pleaded allegation of indirect infringement). The claim charts give enough detail to identify the accused functionalities with enough specificity that it is reasonable to expect that there are no noninfringing alternatives. *See*

e.g., *Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.,* No. 6:19-CV-00059-RWS, 2020 WL 6803249, *8 (E.D. Tex. Jan. 14, 2020) (assessing claim charts for factual support that there were no substantial noninfringing uses). Moreover, Defendants failed to identify any information in the complaint or the claim charts, or the marketing materials cited therein, that show there are substantial noninfringing uses. *See ACQIS LLC v. Wiwynn Corp.*, 614 F. Supp. 3d 499, 508 (W.D. Tex. 2022) (referencing *In re Bill of Lading*, 681 F.3d at 1339 to note the Fifth Circuit has held "that affirmatively pleading the absence of substantial non-infringing uses renders the claim plausible if the pleadings do not undermine that allegation").

\* \* \*

Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss (Docket No. 21) is **GRANTED-IN-PART** with respect to the pre-suit willfulness and indirect infringement claims. Plaintiff's pre-suit willfulness and indirect infringement claims are **DISMISSED**. Plaintiff may file an amended complaint to replead its pre-suit willfulness and indirect infringement claims within **fourteen (14) days**. It is further

**ORDERED** Defendants' Motion to Dismiss (Docket No. 21) is **DENIED** with respect to the post-suit willfulness and indirect infringement claims.

**So ORDERED and SIGNED this 25th day of September, 2023.**

*Robert W. Schroeder III* (signature)

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE